**In re Richard McKAY, Debtor.**

**Richard McKay, Plaintiff,**

v.

**Alliance Mortgage Corporation, Defendant.**

**Bankruptcy No. 01–01986.**
**Adversary No. 01–00084.**

United States Bankruptcy Court, W.D. Virginia, Roanoke Division.

Sept. 25, 2001.

Gary M. Bowman, Roanoke, Virginia, for debtor.

Stephen B. Wood, Friedman & MacFadyen, P.A., Richmond, Virginia, for creditor.

Rebecca Connelly, Roanoke, Virginia, trustee.

## DECISION AND ORDER

ROSS W. KRUMM, Bankruptcy Judge.

The matter before the Court involves the complaint of Richard McKay (hereinafter McKay) to determine the amount, extent, and validity of a lien and the motion for summary judgment by Alliance Mortgage Company (hereinafter AMC) in response thereto. McKay argues that a foreclosure sale which took place after he filed a bankruptcy petition was in violation of the automatic stay, and, therefore, void. AMC contends that based on the doctrine of issue preclusion, McKay cannot prevail on this complaint as a matter of law. This Court previously held that McKay was ineligible under 11 U.S.C. § 109(g) to file the

petition in case number 00–00941.[1] Furthermore, the Circuit Court of Roanoke County validated the foreclosure sale under state law and vested sole possessory rights to the property in the creditor.[2] A hearing was held on August 29, 2001, in Harrisonburg, Virginia, at which the Court heard oral arguments from both parties. For the reasons stated in this decision and order, the Court holds that since McKay was not eligible to file a bankruptcy petition and the filing of the purported petition did not invoke the automatic stay; accordingly, the foreclosure sale was not prohibited by the automatic stay and is not void.

### Facts

By deed of assumption, Richard A. McKay and Deanna C. McKay assumed the obligations of a deed of trust note created by Nichalas and Carol Peterson for property located at 3974 Pitzer Road, S.E., Roanoke, Virginia. The deed of trust note was originally payable to Dominion Federal Savings and Loan Association. Eventually, the note was transferred to Rousseau Mortgage. By operation of a merger, Rousseau Mortgage became AMC.

In mid-June 1996, McKay stopped making continuous and regular payments on the note. By December 1997, McKay stopped making payments altogether. On December 3, 1997, McKay filed a chapter 13 petition, number 97–04713. After filing six amended plans, McKay moved the Court on February 16, 2000, to dismiss the case. The Court entered an order of dismissal on February 17, 2000.[3]

1. *In re Richard Anthony McKay,* No. 00–00941 (Bankr.W.D.Va. July 13, 2000) (order dismissing case).

2. *Rousseau Mortgage Corporation .v. Richard McKay,* No. 01–000043 (Va.Cir.Ct. Roanoke County April 24, 2001) (order validating foreclosure sale and directing McKay to vacate the property).

3. *See In re Richard Anthony McKay,* No. 97–04713 (Bankr.W.D.Va.2000). The Court notes that three different motions for relief from the stay were filed before McKay moved

As McKay was in default on the note, AMC elected to exercise its rights under state law and foreclose on the house. The foreclosure sale was scheduled for March 24, 2000. McKay, however, filed another chapter 13 bankruptcy case, number 00–00941, on March 23, 2000. Despite McKay's filed petition, the foreclosure sale was conducted as scheduled. On June 6, 2000, AMC filed a motion for relief from the stay *nunc pro tunc.* At the hearing on the motion for relief, this Court held that debtor was not eligible to be a debtor under 11 U.S.C. § 109(g) because the 00–00941 chapter 13 case was filed within 180 days of debtor's requesting and receiving a voluntary dismissal of his prior bankruptcy case, number 97–04713. This Court accordingly dismissed McKay's 00–00941 case on July 13, 2000.

Sometime after the foreclosure sale, AMC filed an unlawful detainer action in the Circuit Court of Roanoke County (hereinafter the Circuit Court). On April 24, 2001, the Circuit Court validated the foreclosure sale and granted possessory rights to Rousseau Mortgage. The Circuit Court's decision was final and not appealed by McKay. McKay responded, however, by filing yet another bankruptcy petition, number 01–01986, on May 5, 2001. AMC then moved this Court for relief from the stay invoked by McKay's filing of the 01–01986 petition. McKay, in turn, filed this complaint, commencing an adversary proceeding to determine the amount, extent, and validity of a lien. In his complaint, McKay alleges that the foreclosure sale was in violation of the automatic stay because of the pending bankruptcy case numbered 00–00941.

the court to dismiss his case. *See id.* (listing motion # 1 for relief from stay filed on Oct. 29, 1998, motion # 2 for relief from stay filed on November 16, 1998, and motion # 3 for relief from stay filed on Dec. 8, 1998).

On July 19, 2001, McKay moved this Court for a preliminary injunction in order to prevent his impending eviction from the property. This Court granted the preliminary injunction and enjoined AMC from evicting McKay from the residence.[4] AMC filed an answer and motion for summary judgment arguing that the doctrine of issue preclusion bars McKay's complaint as a matter law. In support of its motion, AMC argues that this Court previously held that McKay was ineligible to file the petition numbered 00–00941. AMC also argues that the final ruling of the Circuit Court validated the foreclosure sale under state law. A hearing was held on August 29, 2001 at which time this Court, based partially on the reasons advanced by AMC, granted AMC's motion for summary judgment from the bench and dissolved the injunction.

## Law and Discussion

█ Although the facts of this case are somewhat convoluted and laden with various filings, motions, assignments, and transfers, the legal analysis relied upon by this Court to dispose of the matter is simple and clear. As an initial matter, it is recognized that the protection of the Bankruptcy Code is not available to everyone. Statutory provisions dictate that certain individuals are not eligible to enjoy the protection afforded by 11 U.S.C. § 362(a). An entity must satisfy the provisions of 11 U.S.C. § 109(g) to qualify as a debtor under the Bankruptcy Code and to obtain the protections provided therein. In the case at bar, McKay cannot meet the eligibility requirements of 11 U.S.C. § 109(g)(2).

4. *Richard Anthony McKay v. Alliance Mortgage Company (In re Richard Anthony McKay),* Ch. 7 Case No 01–01986, Adv. No. 01–00084 (Bankr.W.D.Va.2001) (granting preliminary injunction on August 15, 2001).

Section 301 governs the commencement of a voluntary case. In relevant part, § 301 states that a "voluntary case ... is commenced by the filing of a petition under such chapter by an entity that may be a debtor under such chapter." 11 U.S.C. § 301.[5] Section 109 determines who may be a debtor and states, in pertinent part, the following:

Notwithstanding any other provision of this section, no individual ... may be a debtor under this title who has been a debtor in a case pending under this title at any time in the preceding 180 days if—

(2) the debtor requested and obtained the voluntary dismissal of the case following the filing of a request for relief from the automatic stay provided by section 362 of this title.

11 U.S.C. § 109(g).[6] An individual who qualifies as a debtor can come under the protection of the Bankruptcy Code by filing a petition to commence a bankruptcy case. Then, as stated in § 362 "a petition filed under section 301, 302, or 303 of [the bankruptcy code] ... operates as a stay." 11 U.S.C. § 362(a). Petition as defined in the code means "petition filed under section 301 ... of this title ... commencing a case under this title." 11 U.S.C. § 104(42). Thus, it is a petition, properly filed by an individual who may be a debtor, that invokes the automatic stay. All of these sections taken together compel this Court to conclude that an entity, ineligible under § 109(g), cannot commence a voluntary case under § 301 by filing a purported petition, nor can the entity avail itself of the protection provided by 11 U.S.C. § 362(a), the automatic stay.

This Court is not the only court to recognize this result. *See In re Hollberg*, 208 B.R. 755, 756 (Bankr.D.D.C.1997) ("[A]ny document labeled 'petition' filed regarding that debtor in the 180–day period does not commence a case and does not constitute a petition. Accordingly, such a 'petition' does not give rise to an automatic stay."); *In re Prud'Homme*, 161 B.R. 747, 751 (Bankr.E.D.N.Y.1993) (The court denied a creditor's motion to vacate the automatic stay because the automatic stay was not invoked by the filing of an ineligible debtor. "Where a debtor's lack of entitlement under § 109(g) is clear and unquestioned, the filing is void *ab initio* and there exists no automatic stay for this court to address."); *Miller v. First Federal Sav. & Loan Ass'n.* 143 B.R. 815 820 (1992) (stating "[a] debtor who files a subsequent bankruptcy petition in violation of 11 U.S.C. 109(g)(1) has no standing to obtain any relief from that filing, including the automatic stay"). *See also Rowe v. Ocwen Fed. Bank & Trust*, 220 B.R. 591, 594–95 (E.D.Tex.1997) (recognizing that a petition filed in bad faith and in violation of the 180–day ban was a nullity that did not cause the automatic stay to come into effect).[7]

---

**5.** Sections 302 and 303 govern the commencement of joint and involuntary cases, respectively. These sections likewise impose the requirement that the entity attempting to commence a case is one "that may be a debtor" under the applicable chapter.

**6.** The purpose of this section is to provide the courts with a mechanism to limit and control abusive and serial filings. Section 109(g) is not simply jurisdictional, but, in fact, determines eligibility for bankruptcy relief. *See*

*Montgomery v. Ryan (In re Montgomery)*, 37 F.3d 413, 415 n. 5 (8th Cir.1994).

**7.** Admittedly, the district court actually affirmed the bankruptcy court's lifting of the stay *ab initio* pursuant to 11 U.S.C. § 362(d) to validate a foreclosure sale. It is puzzling, however, to square the bankruptcy court's need to lift a stay that never came into effect. It appears that the court was merely responding to a motion to lift the stay from a cautious and risk averse creditor. By filing a motion to lift the stay, a creditor allows the court to

Here, McKay unquestionably filed a bankruptcy petition within 180 days of the voluntary dismissal of his prior case, number 97–04713. As such, McKay was ineligible under § 109(g) to file the petition numbered 00–00941. McKay's ineligibility under 109(g) precludes a valid filing of a bankruptcy petition, and hence the invocation of the automatic stay. Since the automatic stay was inoperative upon the filing of McKay's purported petition, there was no legal obstacle supplied by the bankruptcy code to prevent the foreclosure sale that took place on March 24, 2000, or render it void.

Given the holding in this case, it is unnecessary to discuss the validity of the foreclosure sale, i.e., who has valid title to the land or the propriety of the Circuit Court's decision. This Court needs to hold only that the filing of the purported bankruptcy petition, numbered 00–00941, did not give rise to the automatic stay and did not invalidate the foreclosure sale.

### Conclusion

11 U.S.C. § 109(g) specifically excludes from those who may be a debtor any individuals who have been a debtor under Title 11 at any time in the preceding 180 days if the individual obtained a voluntary dismissal of the case following a requested relief from the automatic stay. Only a person qualified under § 109 can commence a voluntary bankruptcy case that will invoke the automatic stay. For the reasons stated in this decision and order and from the bench on August 29, 2001, it is the decision of this Court that the purported filing on March 23, 2000 by McKay was a nullity *ab initio* and did not invoke the automatic stay. Accordingly, it is

determine eligibility under § 109(g), thereby precluding sanctions for actions taken in vio-

### ORDERED

That the creditor's motion for summary judgment is **GRANTED** and the preliminary injunction is **DISSOLVED**.

lation of the stay, if it is in operation.