**In re Chad Channon ENLOE and Carla Jean Enloe, Debtor.**

No. 07–13959–SBB.

United States Bankruptcy Court, D. Colorado.

Aug. 23, 2007.

Jesse Aschenberg, Esq., Greenwood Village, CO, for Debtors.

Alison Goldenberg, Esq., Office of the United States Trustee, Denver, CO, Trial Attorney for The Office of the United States Trustee.

## MEMORANDUM OPINION AND ORDER

SIDNEY B. BROOKS, Bankruptcy Judge.

THIS MATTER comes before the Court on the United States Trustee's Motion to Dismiss Case under 11 U.S.C. § 109(h) filed May 7, 2007 (Docket # 15), the Response thereto filed by Chad Channon Enloe and Carla Jean Enloe ("Debtors") on June 5, 2007 (Docket # 28). The Court, having reviewed the pleading and the Court's file in this matter, makes the following findings of fact, conclusions of law, and Order.

### I. *Summary*

This Court, here, is being asked by the United States Trustee to dismiss the Debtors' bankruptcy case because the Debtors' obtained their pre-petition certificate of credit counseling ("Certificate of Credit Counseling") within 189 days—not 180 days—before filing their bankruptcy case. The Court finds and concludes that even though the Debtors obtained their Certificate of Credit Counseling—as distinguished from the requisite post-petition financial management course—189 days before they filed for bankruptcy, it does not mandate dismissal. Thus, the Court declines to dismiss the Debtors' Bankruptcy Case.

### II. *Stipulated Facts*

The following facts have been stipulated to by the parties and are set forth herein verbatim:

1. [Debtors] are married and filed their Voluntary Petition jointly.[1]

2. Each Debtor obtained a pre-bankruptcy Certificate of Credit Counseling on October 16, 2006 through Money Management International, an approved non-profit credit counseling agency. The Certificates state that a debt repayment plan was not prepared.[2]

3. The Debtors, by and through their attorney, filed [for relief under] Chapter 7 [of the Bankruptcy Code] on April 23, 2007. The Debtors filed their case 189 days after the Debtors obtained their Certificate of Credit Counseling from Money Management International.[3]

4. Between the dates the Debtors attended credit counseling and the date they filed their Chapter 7 Bankruptcy case, there was no material change in the Debtor's financial circumstances.[4]

5. The Debtors delayed the filing of their case while they attempted to sell their home to avoid foreclosure.[5]

6. On May 7, 2007, the United States Trustee filed a Motion to Dismiss the Debtors' Bankruptcy because the Debtors did not receive their credit counseling within 180 calendar days before filing their bankruptcy. The UST alleged that the

1. Joint Pretrial Statement 3, at ¶ 1.

2. Joint Pretrial Statement 3, at ¶ 2.

3. Joint Pretrial Statement 3, at ¶ 3.

4. Joint Pretrial Statement 3, at ¶ 4.

5. Joint Pretrial Statement 3, at ¶ 5.

Debtors did not receive their credit counseling in a timely manner.[6]

7. The United States Trustee's office did not confer with the Debtors or their attorney before filing the Motion to Dismiss.[7]

8. The Debtors attended their Chapter 7 Meeting of Creditors on May 31, 2007.[8]

9. On June 6, 2007, the Chapter 7 Trustee, Mr. Stephen Peters, issued a No Asset Report.[9]

10. On June 28, 2007, each Debtor obtained a second pre-bankruptcy Certificate of Credit Counseling through Money Management International, an approved non-profit credit counseling agency. The Certificates state that the debt repayment plan was not prepared. The Debtors filed these Certificates with the Court on July 6, 2007.[10]

11. On July 29, 2007, each Debtor obtained Certificates of Debtor Education through Money Management International, Inc.[11]

12. On July 7, 2007, the Debtors filed their certificates of completion of requisite post-filing financial management course. The course was completed and the certificate was filed within the time lines set forth by the Bankruptcy Code and relevant rules of procedure.[12]

## III. *Issue*

Whether dismissal is mandatory when a debtor has obtained a pre-petition Certificate of Credit Counseling 189 days—not within 180 days—prior to the filing of the bankruptcy petition and where none of the three specifically delineated exceptions in section 109(h) apply to the debtor.

## IV. *Discussion*

### A. The Credit Counseling Requirement

On October 17, 2005, 11 U.S.C. § 109(h) became effective in consumer cases as a result of Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA"), 11 U.S.C. § 109(h)(1) provides that;

> an individual may not be a debtor under this title unless such individual has, during the 180–day period preceding the date of filing of the petition by such individual, received from an approved nonprofit budget and credit counseling . . . an individual or group briefing (including a briefing conducted by telephone or on the Internet) that outlined the opportunities for available credit counseling and assisted such individual in performing a related budget analysis.

■ A principal goal of the credit counseling requirement is to evaluate a potential debtor's financial condition and determine if bankruptcy is the best option, and, if so, whether Chapter 13 might be an appropriate alternative to Chapter 7. Here, the United States Trustee has never even suggested that a repayment plan was necessary or appropriate, or that Chapter 13 was more proper for these Debtors under section 707(b).

---

6. Joint Pretrial Statement 3, at ¶ 6.

7. Joint Pretrial Statement 3, at ¶ 7.

8. Joint Pretrial Statement 3, at ¶ 8.

9. Joint Pretrial Statement 3, at ¶ 9.

10. Joint Pretrial Statement 3, at ¶ 10.

11. Joint Pretrial Statement 4, at ¶ 11.

12. Joint Pretrial Statement 4, unnumbered paragraph.

Although certainly not controlling, it is instructive and gives context to this issue to note the developing consensus, since the inception of BAPCPA, that the credit counseling requirement is largely a procedural hurdle without value or consequence.[13] In *In re Elmendorf*, the Honorable Cecelia G. Morris, Bankruptcy Judge for the Southern District of New York, noted that the credit counseling industry has a dubious track record and that the credit counseling itself had very little merit.[14] She made these observations:

> Credit counseling was a significant aspect of the new bankruptcy legislation because the requirement was intended to provide debtors with education as to all of their options when experiencing financial difficulty, *before* a resort to bankruptcy protection was necessary to lead financially responsible lives. This facially well-intentioned section of the BAPCPA has evolved into an expensive, draconian gatekeeping requirement that has prevented many deserving individuals from qualifying for bankruptcy relief. The credit counseling requirement has not proven to be of assistance to debtors in seeking relief outside of the bankruptcy context, as shown by a recent survey of credit counseling agencies performed by the National Association of Consumer Bankruptcy Attorneys. That study determined that of the 66,335 consumers served by the participating credit counseling agencies, a paltry 33 percent qualified

for alternative (i.e. non-bankruptcy) debt management treatment. Additionally, many have these same credit-counseling agencies have come under fire for fraudulent practices; some have lost their not-for-profit status. The requirement that a debtor seek "credit counseling" before being eligible for bankruptcy relief is quickly becoming the most outrageous fleecing of consumer debtors in this Court's memory—a perfunctory exercise with little or no substance which leaves a putative debtor $50–$100 the poorer. The Court has seen at least one example of a "Client Action Plan" provided to a consumer debtor before this Court. *See In re Anthony Rios*, Case NO. 05–55002, ECF Docket No. 11.[15] The Client Action Plan proposed in that case is repetitive, advising the debtor twice to track expenses, and tends to state the obvious, such as recommending that debtor seek a job making higher wages, and referring debtor to the local library for resources on bankruptcy.[16]

Regardless of the merit of credit counseling, however, *it is a requirement* that Congress believed was an important prerequisite to filing a consumer bankruptcy cased and it must be complied with, barring an exception or exemption under 11 U.S.C. § 109(h)(2)-(4). The question here is what should or must a Court do when a debtor has not complied with the technical requirements of 11 U.S.C. § 109(h)(1) and

---

13. *See* David Gray Carlson, *Means Testing: The Failed Bankruptcy Revolution of 2005*, 15 Am.Bankr.Inst.L.Rev. 223, 230 (Spring 2007) and Jeffrey A, Deller & Micholas E. Meriwether, *Putting Order to the Madness, BAPCPA and the Contours of the New Prebankruptcy Credit Counseling Requirements*, 16 J.Bankr.L. & Prac. 101, 104–106 (Feb.2007),

14. 345 B.R. 486 (Bankr.S.D.N.Y.2006).

15. A published opinion regarding this debtor can be found at: *In re Rios*, 336 B.R. 177 (Bankr.S.D.N.Y.2005).

16. *Id.* at 490 (footnotes omitted)(emphasis in original).

has presented no statutory exception or exemption.

## B. Waiver of the Credit Counseling Requirement–Section 109(h) and its Interrelationship with Other Provisions of the Code, Local Rules, and Local Practice Procedures

### 1. *Statutory Exceptions to 11 U.S.C. § 109(h)(1)*

The Court *may* waive the requirements of 11 U.S.C. § 109(h)(1) if one of the three limited statutory exceptions are met;

(1) Under 11 U.S.C. § 109(h)(2), the United States Trustee has determined that there are insufficient credit counseling agencies to provide adequate services.[17]

(2) All of the requirements of "exigent circumstances" are satisfied pursuant to 11 U.S.C. § 109(h)(3).[18]

(3) Under 11 U.S.C. § 109(h)(4), the debtor cannot complete the credit counseling requirements because of incapacity, disability or active military duty in a combat zone.[19]

*In this case, the Debtors have not alleged any of the limited exceptions. Even more notable, counsel has offered no explanation as to why he missed the fact that the credit counseling was obtained over 180 days before the filing of the case and filed a deficient case.*

**17.** Pursuant to 11 U.S.C. & 109(h)(2);
(A) Paragraph (1) shall not apply with respect to a debtor who resides in a district for which the United States trustee (or the bankruptcy administrator, if any) determines that the approved nonprofit budget and credit counseling agencies for such district are not reasonably able to provide adequate services to the additional individuals who would otherwise seek credit counseling from such agencies by reason of the requirements of paragraph (1).
(B) The United States trustee (or the bankruptcy administrator, if any) who makes a determination described in subparagraph (A) shall review such determination not later than 1 year after the date of such determination, and not less frequently than annually thereafter. Notwithstanding the preceding sentence, a nonprofit budget and credit counseling agency may be disapproved by the United States trustee (or the bankruptcy administrator, if any) at any time.

**18.** Section 109(h)(3) provides:
(A) Subject to subparagraph (B), the requirements of paragraph (1) shall not apply with respect to a debtor who submits to the court a certification that—
(i) describes exigent circumstances that merit a waiver of the requirements of paragraph (1);
(ii) states that the debtor requested credit counseling services form an approved nonprofit budget and credit counseling agency, but was unable to obtain the services referred to in paragraph (1) during the 5–day period beginning on the date on which the debtor made that request; and
(iii) is satisfactory to the court.
(B) With respect to a debtor, an exemption under subparagraph (A) shall cease to apply to that debtor on the date on which the debtor meets the requirements of paragraph (1), but in no case may the exemption apply to the debtor after the date that is 30 days after the debtor files a petition, except that the court, for cause, may order an additional 15 days.

**19.** Section 109(h)(4) provides:

The requirements of paragraph (1) shall not apply with respect to a debtor whom the court determines, after notice and hearing, is unable to complete those requirements because of incapacity, disability, or active military duty in a military combat zone. For the purposes of this paragraph, incapacity means that the debtor is impaired by reason of mental illness or mental deficiency so that he is incapable of realizing and making rational decisions with respect to his financial responsibility; and 'disability' means that the debtor is so physically impaired as to be unable, after reasonable effort, to participate in an in person, telephone, or Internet briefing required under paragraph (1).

### 2. *Is 11 U.S.C. § 109(h)(4) Jurisdictional?*

Arguably, the failure to file the Certificate of Credit Counseling is "jurisdictional." The consequence—if the failure to file a Certificate of Credit Counseling is a jurisdictional defect—*may be* that the Debtors are not eligible to file bankruptcy and their case should be "stricken."[20] However, while case law is split on the issue of jurisdiction and the resultant consequence thereof, this Court is persuaded by those courts that have held that "eligibility to be a debtor is not jurisdictional and that until a bankruptcy court determines eligibility, a case actually exists which cannot thereafter be deemed a nullity by simply 'striking' the case as if it never existed."[21]

### 3. *Statutory Construction*

The question before the Court is whether dismissal is *mandated* when a debtor has failed to comply with 11 U.S.C. § 109(h)(1). The majority of case law seems to suggest that dismissal *is* manda-tory.[22] However, this Court does not agree and adopts the minority view as the more well-reasoned and statutorily sound application of the law.

[3, 4] In reviewing, 11 U.S.C. § 109(h)(1), this Court's analysis must begin with the statutory language itself. As the Supreme Court held in *United States v. Ron Pair Enterprises, Inc.,*

The task of resolving the dispute over the meaning of [a Bankruptcy Code section] begins where all such inquires must begin: with the language of the statute itself . . . where . . . the statute's language is plain, "the sole function of the courts is to enforce it according to its terms."[23]

"The plain meaning of legislation should be conclusive, except in the 'rare cases [in which] the literal application of a statute will produce a result demonstrably at odds with the intentions of its drafters.'"[24] Nevertheless, where strict application of the plain language would result in manifest injustice, judicial discretion must be exercised.[25]

---

**20.** Cases striking petitions include, among others: *In re Wilson*, 346 B.R. 59, 64 (Bankr. N.D.N.Y.2006); *In re Rios*, 336 B.R. 177, 180 (Bankr.S.D.N.Y.2005); and *In re Hubbard*, 333 B.R. 377, 388 (Bankr.S.D.Tex.2005).

**21.** *Clippard v. Bass (In re Bass)*, 365 B.R. 131, 137 (W.D.Tenn.2007) (citations omitted). The emerging trend in the law is that dismissal is the appropriate avenue, *not* striking the petition as though it never existed. *In re Wilson*, 346 B.R. 59, 64 (Bankr.N.D.N.Y.2006).

**22.** *See, Clippard v. Bass (In re Bass)*, 365 B.R. 131 (W.D.Tenn.2007) (dismissal, rather than striking, is appropriate when a debtor has failed to comply with 11 U.S.C. § 109(h)); *In re Ruckdaschel*, 364 B.R. 724 (Bankr.D.Idaho 2007) (failure to strictly comply with 11 U.S.C. § 109(h) is grounds for dismissal); *In re Giles*, 361 B.R. 212 (Bankr.D.Utah 2007) (the court dismissed a case when the debtors obtained credit counseling 182 days before filing for bankruptcy relief); *In re Mills*, 341 B.R. 106 (Bankr.D.D.C.2006) (debtor, who re-ceived credit counseling on the same date as filing, was not eligible for bankruptcy relief and the case had to be dismissed); *but see, In re Manalad*, 360 B.R. 288 (Bankr.C.D.Cal.2007)(dismissal of a case is not mandated by a debtor's failure to obtain credit counseling); and *In re Hess*, 347 B.R. 489 (Bankr.D.Vt.2006)(court would not dismiss a case for failure to obtain credit counseling when the credit counseling agency was not an approved agency at the time of counseling and when the case was mistakenly filed when the debtor's attorney was hospitalized).

**23.** 489 U.S. 235, 241, 109 S.Ct. 1026, 1030, 103 L.Ed.2d 290 (1989).

**24.** 489 U.S. at 242, 109 S.Ct. at 1031.

**25.** *Rector, Etc., of Holy Trinity Church v. United States*, 143 U.S. 457, 459, 12 S.Ct. 511, 36 L.Ed. 226 (1892).

■ The plain language of section 109(h)(1), while it does require an individual debtor to obtain credit counseling in the 180–day period preceding the date of filing of the petition, does *not* expressly articulate the consequence(s) of a debtor's failure to obtain such credit counseling or to establish the criteria for the exigent circumstances exemption.[26] On this point, section 109(h)(1) is silent. Thus, the Court must review other pertinent provisions of the Bankruptcy Code to ascertain whether dismissal is mandatory or discretionary for a debtor's failure to comply with section 109(h)(1). To answer that question, the Court must look to the interplay of 11 U.S.C. §§ 109(h)(1); 521(a), (b), (i); 707(a); Transitional Local Bankruptcy Rule ("T.L.B.R.") 1007–1(b); Local Bankruptcy Rule ("L.B.R.") 505; and the United States Trustee's Standing Motion to Dismiss.

4. *11 U.S.C. §§ 521(b) and 521(i)(1) Do Not Mandate Dismissal in this Instance*

11 U.S.C. § 521(a) sets out various items that must be filed by a debtor, "unless the court orders otherwise."[27] Section 521(a), however, does *not* reference the requirement that a certificate from an approved credit counseling agency *must* be provided. This requirement is found in 11 U.S.C. § 521(b), which provides:

In addition to the requirements under subsection (a), a debtor who is an individual shall file with the court—

(1) a certificate from the approved nonprofit budget and credit counsel-

ing agency that provided the debtor services under section 109(h) describing the services provided to the debtor; and

(2) a copy of the debt repayment plan, if any, developed under section 109(h) through the approved nonprofit budget and credit counseling agency referred to in paragraph (1).

It is notable that the statute providing "automatic" dismissal—that is, 11 U.S.C. § 521(i)(1)—is unrelated to and does not even reference 11 U.S.C. § 109(h).[28] As the Court in *In re Manalad* noted:

There is a completely separate statutory basis for concluding that a lack of eligibility does not mandate dismissal. Nowhere in Title 11 is there a provision setting forth the remedy for failure to comply with the Credit Counseling Requirements, while the remedy of dismissal is specifically provided for in other situations.

For example, in § 521(i)(1) Congress mandates dismissal for failure to file certain schedules, statements, and employer payment information, if such documents are not filed within 45 days of filing a bankruptcy petition. Congress listed these schedules, statement, and other information in § 521(a)(1), but set forth a specific subsection, § 521(b), to describe the budget and credit counseling documents that need to be filed. Section 521(i)(1) omits the credit counseling certificate and debt repayment plan from the mandatory dismissal remedy that is imposed when a debtor fails

---

26. *See In re Hess,* 347 B.R. 489 (Bankr.D.Vt. 2006).

27. 11 U.S.C. § 521(a)(1)(B),

28. Section 521(i)(1) provides that:
Subject to paragraphs (2) and (4) and notwithstanding section 707(a), if an individual debtor in a voluntary case under chapter 7

or 13 fails to file all of the information required under subsection (a)(1) within 45 days after the date of the filing of the petition, the case *shall be automatically dismissed* effective on the 46th day after the date of the filing of the petition. (emphasis added).

to file many of the other documents required in a bankruptcy case. Thus, I conclude that Congress intended that dismissal is not mandated when debtors do not comply with the Credit Counseling Requirements.[29]

Indeed, 11 U.S.C. § 521(i)(1) *mandates* dismissal under the circumstances set forth therein by the use of the word "shall."[30] But, the key component missing here is that the "shall" found in 11 U.S.C. § 521(i)(1) refers back to section 521(a)(1), *not* 11 U.S.C. § 109(h) or 521(b). The bottom line: Congress knew how to and did mandate automatic dismissal in various parts of the Bankruptcy Code; it did not do so with respect to the section 109(h) credit counseling requirements.

5. *11 U.S.C. § 109(h) and 11 U.S.C. § 707(a)*

It would appear that the proper statutory linkage leading to dismissal in cases when there has not been compliance with 11 U.S.C. § 109(h) is to 11 U.S.C. § 707(a).

The language of 11 U.S.C. § 707(a) is permissive. In other words, this Court "*may* dismiss a case" if there is:

(1) unreasonable delay by the debtor that is prejudicial to creditors;

(2) nonpayment of any fees and charges required under chapter 123 of title 28; and

(3) failure of the debtor in a voluntary case to file, within fifteen days or such additional time as the court may allow after the filing of the petition commencing such case, the information required

by paragraph (1) of section 521, but only on a motion by the United States trustee.[31]

The language is *not* mandatory.

Moreover, as the Honorable Colleen Brown, Bankruptcy Judge for the District of Vermont, noted:

Although § 109(h) is new, it is not unique. Subsection 109(g) is aimed at limiting the eligibility of repeat filers and is analogous to § 109(h) in that it too emphatically dictates that an individual may not be a debtor if certain circumstances occurred in prior filings ...

It is instructive that courts have exercised discretion in applying § 109(g), and have held that not every case that fits all of the characteristics of this provision must be dismissed.[32]

Consequently, this Court also concludes that, like 11 U.S.C. § 109(g), 11 U.S.C. § 109(h) is not mandatory; it is discretionary.

6. *T.L.B.R. 1007–1(b), L.B.R. 505, and the United States Trustee's Standing Motion to Dismiss*

The Court would also concluded that this Court's Local Rules *do not mandate* dismissal. While T.L.B.R. 10071(b) requires compliance with 11 U.S.C. § 109(h), it does not compel dismissal. Under T.L.B.R. 1007–1(d):

The failure to timely file all documents required by 11 U.S.C. §§ 521 and 109, T.L.B.R. 1007–1, T.L.B.R. 3015–1 *may* result in the dismissal of your case un-

---

**29.** 360 B.R. at 296.

**30.** 11 U.S.C. § 521(i)(1) provides that:

Subject to paragraphs (2) and (4) and notwithstanding section 707(a), if an individual debtor in a voluntary case under chapter 7 or 13 fails to file all of the information required under subsection (a)(1) within 45

days after the date of the filing of the petition, the case shall be automatically dismissed effective on the 46th day after the date of the filing of the petition.

**31.** Emphasis added.

**32.** *In re Hess,* 347 B.R. at 497.

der L.B.R. 505 and the United States Trustee's Motion to Dismiss and/or under 11 U.S.C. §§ 707(a), 1112(b), 1208(c) or 1307(c), as applicable, without further notice, certification or hearing.[33]

L.B.R. 505(a)(2) provides that "cause" for dismissal exists for failure to cure a deficient filing. Specifically, L.B.R. 505(a)(2) provides:

> In the event that a case is deficient as defined in subsection (a)(1) of this Rule, such deficiency *shall* constitute cause for dismissal pursuant to 11 U.S.C. 707(a), 1112(b) & (e), 1207(c)(1), and 1307(c)(1) & (9).[34]

By its operation, L.B.R. 505(a)(3) allows this Court to recognize the filing of the United States Trustee's Standing Motion to Dismiss Deficient Case and it directs that the Clerk of the Court provide notice of opportunity to be heard to a debtor, debtor's attorney, creditors, and interested parties. The operation of L.B.R. 505(a)(3) and the United States Trustee's Standing Motion to Dismiss Deficient Case primarily allow for dismissal of a case without further notice or hearing (beyond that afforded by the notice and opportunity provided by the Clerk of the Court) for the purpose of administrative convenience. The Court concludes that while the deficiency constitutes "cause" for dismissal, dismissal is not mandatory by operation of T.L.B.R. 1007–1(b), L.B.R. 505, and the United States Trustee's Standing Motion to Dismiss.

### C. Discretion of the Court under 11 U.S.C. § 109(h)

▮ The Court finds guidance from both the *Manalad* case, wherein the Honorable Vincent P. Zurzolo, Bankruptcy Judge, set forth a three part test in ascertaining whether an 11 U.S.C. § 109(h) deficiency has been "cured"[35] and the *Hess* case wherein, Judge Brown utilized a "totality of the circumstances" test to consider whether dismissal was appropriate. The Court believes under either test, this case should not be dismissed.

### 1. The Manalad Test for "Cure" of Section 109(h) Ineligibility

The *Manalad* test includes the following inquiry:

1. The debtor has made a reasonable explanation for not participating in budget and credit counseling within 180 days prior to filing a bankruptcy petition;

2. The debtor participates in budget and credit counseling once the debtor learns that it is necessary; and

3. At the budget and credit counseling session, it is determined that the individual's debts could not have been paid outside of bankruptcy.[36]

First, the Court believes that the Debtors have a reasonable explanation for their failure to comply with 11 U.S.C. § 109(h). Here, the Debtors *did receive* budget and credit counseling 189 days before the filing of the bankruptcy case. The delay in filing the bankruptcy case—and, thus, the filing outside of the 180 days—was a result of the Debtors' attempt to sell their home to avoid foreclosure, and avoid bankruptcy. It appears that the Debtors' failure in receiving credit counseling in the 180–day period preceding the date of filing of the petition was *not* the Debtors' oversight, but, instead, a failure by Debtors' counsel in calendaring of important dates and re-

---

**33.** Emphasis added.

**34.** Emphasis added.

**35.** 360 B.R. at 308.

**36.** *Id.*

viewing the requisite filing documents and their contents. While this Court finds the Debtors' explanation reasonable, the Court does not find counsel for the Debtors' explanation reasonable and, as set forth below, believes that an appropriate sanction should issue.

Second, the Debtors participated in budget and credit counseling 189 days before the filing of this case and, again, on June 28, 2007. Moreover, they timely completed their post-petition money management course.

Third, Debtors, following their credit counseling, did not go forward nor were they advised or compelled by the United States Trustee to go forward with a debt repayment plan. Further, the Debtors' financial condition did not materially change from their budget and credit counseling conducted 189 days before the filing and as of the date of filing.

Finally, the Debtors' bankruptcy case was not challenged or objected to by any creditor or the Chapter 7 Trustee. And, the Trustee fully administered and filed a no asset case report prior to the hearing in this contested matter.

The Court believes that the Debtors' have "cured" the deficient filing.

### 2. *The Hess "Totality of Circumstances" Test*

Judge Brown articulated that, in the context of a motion to dismiss brought under 11 U.S.C. § 707(a) for debtors failure to comply with 11 U.S.C. § 109(h), the court must consider the "totality of the circumstances." Under this analysis, the burden for establishing "cause" to dismiss under section 707(a) is on the moving party—here, the United States Trustee—and that party must meet their burden by a preponderance of the evidence.[37] She concluded that certain criteria were essential when determining whether a case filed by a debtor who did not establish all the criteria of § 109(h) should be dismissed under § 707(a). Her list included:

(1) whether the debtor filed the case in good faith,

(2) whether the debtor took all reasonable steps to comply with the statutory requirements,

(3) whether the debtor's failure to comply was the result of the circumstances that were both extraordinary and beyond the control for the debtor,

(4) whether the debtor's conduct meets the minimum requirements of § 109(h),

(5) whether any party would be prejudiced by allowing the case to proceed, and

(6) whether there are any unique equitable factors that tip the balance in one direction or the other.[38]

First, in this case, there is no allegation by creditors or the United States Trustee that the Debtors *did not* file their case in good faith.

Second, not only did the Debtors obtain pre-petition credit counseling 189 days before the filing, they obtained that credit counseling a second time prior to their discharge, and they also received their mandatory debtor education post-petition. This Court, therefore, concludes that the Debtors took all reasonable steps to comply with the statutory requirements.

Third, this Court believes that Debtors' failure to comply with the technical requirements of 11 U.S.C. § 109(h) were the result of an attorney's oversight. Admittedly, attorney oversight is generally not considered an extraordinary circumstance.

---

**37.** 347 B.R. at 497.

**38.** 347 B.R. at 498.

However, the error here is a failure to comply with a legal technicality, largely beyond the control or knowledge of the Debtors. Debtors employed bankruptcy counsel and relied on counsel to navigate them through the intricacies and technicalities of BAPCPA. The fault here lies with counsel for the Debtors, not the Debtors themselves, in failing to comply with the requirements of 11 U.S.C. § 109(h).

Fourth, the Debtors' conduct meets the minimum requirements of § 109(h) and the spirit of the law. That is, they sought counseling to attempt to ascertain their financial options. By implication premised on the facts of this case, one could ascertain that one option was to attempt to sell their home and avoid foreclosure and possibly bankruptcy.

Fifth, no party is prejudiced by allowing the case to conclude. And, the United States Trustee has not alleged any such prejudice.

Sixth, there are equitable factors that tip the balance in favor of not dismissing this case. The consequence of dismissing this case, when it is largely the fault of counsel, is an unfair result. As noted in *Manalad,*

> Debtors who file for bankruptcy under BAPCPA without complying with the Credit Counseling Requirements face the harsh consequences visited upon a debtor who must file another bankruptcy case if the prior bankruptcy is dismissed for not strictly adhering to the Credit Counseling Requirements. For a debtor in financial straits, this means the expense of another filing fee … and the time, effort, and possible attorneys' fees needed to prepare a new petition and set of case commencement documents. It also means a potential limited availability of the protection of the automatic stay. Under § 362(c)(3), when a debtor files a petition after a petition was pending within the preceding year, the debtor may lose the protection of § 362(a) thirty days after filing the later petition with respect to secured creditors and lessors. The debtor has an opportunity to obtain an order continuing the automatic stay but must promptly file a motion, schedule a hearing, and overcome a presumption that the later case was not filed in good faith. For debtors who had one case dismissed, then a second case dismissed for failure to comply with the Credit Counseling Requirement, they must wait a full year to file another petition if they with for any protection of the automatic stay.

> Thus, because the consequence of dismissal are so significant, Congress would have mandated dismissal as a remedy for non-compliance with the Credit Counseling Requirements as it did in other situations if it intended dismissal to be the only available remedy.[39]

## D. Sanctions

Under 11 U.S.C. § 105(a) this Court may:

> issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title.

▮▮▮ Section 105(a) "imbue[s] the bankruptcy courts with the inherent power recognized by the Supreme Court … [this includes] the power to maintain order and confined improper behavior in its own proceedings seems a necessary adjunct to any tribunal charged by law with the adjudication of disputes."[40] However, use of 11 U.S.C. § 105(a) by a Bankruptcy Court,

---

**39.** 360 B.R. at 307 (citations omitted).

**40.** *Jones v. Bank of Santa Fe (In re Courtesy Inns),* 40 F.3d 1084, 1089 (10th Cir.1994).

must not be in contravention of the Bankruptcy Code, but must be utilized in furtherance thereof.[41] The Court believes that the imposition of sanctions against Debtors' counsel is appropriate, rather than dismissal of this case.

 It is evident to this Court that Debtor's counsel did not thoroughly review the documents necessary to the filing of this case. Otherwise, he would have discovered that the Debtors obtained their Certificate of Credit Counseling 189 days before the filing of the case. This oversight on his part has created unnecessary delay in this case for the Debtors and has needlessly prompted the United States Trustee to pursue its Motion to Dismiss in this case.

Therefore, due to Debtors' counsel's failure to properly tend to and properly schedule this case prior to the filing thereof, such that he could ascertain that the Debtors were not in technical compliance with 11 U.S.C. § 109(h), the Court will sanction Debtors' counsel by (a) requiring the forfeiture of attorney fees earned in this case, and (b) entering a sanction in the sum of $200.00, payable to the Metro Volunteer Lawyers subsection of the Denver Bar Association within 10 days after this Order becomes final and non-appealable.

## V. *Order*

IT IS THEREFORE ORDERED that;

1. The United States Trustee's Motion to Dismiss (Docket # 15) is DENIED.

2. Pursuant to 11 U.S.C. § 105(a), Debtors' counsel, Mr. Jesse Aschenberg, is sanctioned by (a) forfeiture of fees earned in this case and (b) payment in the sum of $200.00 to the Metro Volunteer Lawyers subsection of the Denver Bar Association

---

41. *Marrama v. Citizens Bank of Massachusetts,* — U.S. —, 127 S.Ct. 1105, 166